UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-60981-CIV-CANNON/Hunt

CAFE, GELATO & PANINI LLC,
d/b/a Cafe Gelato Panini, and DJAMES
FOODS, INC., on behalf of themselves and
all others similarly situated,

    Plaintiffs,
v.

SIMON PROPERTY GROUP, INC.,
SIMON PROPERTY GROUP, L.P.,
M.S. MANAGEMENT ASSOCIATES, INC.,
and THE TOWN CENTER AT BOCA RATON TRUST,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO STAY DISCOVERY

**THIS CAUSE** comes before the Court upon the Motion to Stay Discovery filed by Defendants Simon Property Group, Inc. ("Simon Property"), Simon Property Group, L.P. ("Simon Partnership"), M.S. Management Associates, Inc. ("M.S. Management"), and The Town Center at Boca Raton Trust's (the "Trust") (collectively, "Simon" or "Defendants") [ECF No. 40]. Defendants seek a stay of discovery pending a Court ruling on Defendant's Motion to Abstain or to Dismiss Plaintiffs' Amended Complaint [ECF No. 39].

The Court has reviewed the parties' submissions and the relevant portions of the record [ECF Nos. 19, 40, 47, 51]. The Court also held a hearing on the Motion on May 17, 2021 [ECF No. 77]. For the reasons set forth below, Defendants' Motion to Stay [ECF No. 40] is **DENIED**.

CASE NO. 20-60981-CIV-CANNON/Hunt

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs, Cafe, Gelato & Panini, LLC, ("Cafe Gelato") and Djames Foods, Inc. d/b/a Pete's Burgers, Wings & Drinks ("Pete's Burgers") (collectively, "Plaintiffs"), initiated this putative class action in May 2020, on behalf of themselves and other similarly situated tenants [ECF No. 1]. Subsequently, in September 2020, Plaintiffs filed the current operative pleading—the First Amended Complaint ("FAC")—in which they assert seven counts against Defendants [ECF No. 19]. The FAC alleges that, during a period exceeding fifteen years, Defendants, a commercial real estate company that owns malls across the country [ECF No. 19 ¶11] and its real estate management entities (also named defendants in this action), acted in concert with one another to fraudulently misrepresent, through inflated invoices, the actual amount of electrical energy consumption at Plaintiffs' leased commercial spaces. These inflated invoices, the FAC alleges, then were sent to tenants across the country through the United States mail system to receive payments in excess of what the tenants actually consumed in electricity [ECF No. 19 ¶¶1, 3, 4]. Furthermore, Plaintiffs allege that Simon, Inc., Simon Partnership, and M.S. Management perpetrated a nationwide scheme to implement a standard clause into leases that barred tenants from performing independent audits on their energy usage [ECF No. 19 ¶4]. In turn, Defendants allegedly overcharged tenants for electricity and used the federal mail and wire system to distribute the leases and the inflated energy bills, thereby deriving illicit profits from the scheme. Plaintiffs also aver that, in furtherance of this scheme, Defendants enlisted the aid of nonparty Valquest Systems, Inc. ("Valquest"), an independent energy company in Texas that provided surveys of how much energy Plaintiffs consumed [ECF No. 19 ¶34]. Valquest then overstated Plaintiffs and the class members' energy consumption in order to hide the intentional electrical cost markups by Simon, Inc., Simon Partnership, and M.S. Management.

Based on these allegations, Plaintiffs assert the following seven causes of action: (1) Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c)-(d), against all Defendants (Count I); (2) Unjust Enrichment against Defendants Simon, Inc., Simon Partnership, and M.S. Management on behalf of all putative classes[1] (Count II); (3) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*, against Defendants Simon, Inc., Simon Partnership, and M.S. Management on behalf of the Florida Statutory Class and the TCBR class (Count III); (4) Violation of Florida's Civil Remedies for Criminal Practices Act ("Florida Rico Act"), Fla. Stat. §§ 772.103(1), (3)-(4), 772.104(1), 777.011, and 777.03(1)(a), against all Defendants on behalf of the Florida Statutory Class and the TCBR Class (Count IV); (5) Breach of Contract against the Defendant Trust on behalf of the TCBR Class (Count V); (6) Breach of the Implied Covenant of Good Faith and Fair Dealing against the Trust and on behalf of the TCBR Class (Count VI); and (7) Breach of Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*, against Defendants Simon, Inc., Simon Partnership, and M.S. Management and on behalf of the Texas Statutory Class (Count VII).

Following the submission of Plaintiffs' FAC, Defendants filed a Motion to Abstain or Alternatively to Dismiss the FAC [ECF No. 39 ("Motion to Abstain or Dismiss")]. The Motion to Abstain or Dismiss asks this Court to abstain from adjudicating this case, or, alternatively, to dismiss all counts in the FAC pursuant to Federal Rule of Civil Procedure 12(b). Shortly thereafter, Defendants filed the Motion to Stay at issue here, seeking an order staying discovery pending a Court ruling on Defendant's Motion to Abstain or to Dismiss [ECF No. 40]. The parties then

---

[1] The Court uses the acronyms set forth in the FAC to identify the putative classes in this Order [ECF No. 19 ¶88 (defining four putative classes, including the Nationwide Class, the Florida Statutory Class, the TCBR [Town Center at Boca Raton] Class, and the Texas Statutory Class)].

engaged in discovery-related litigation.  Plaintiffs moved to compel discovery from Defendants [ECF No. 48; *see* ECF No. 53]; Defendants opposed the motion [ECF No. 52]; and Magistrate Judge Hunt ultimately entered an order granting in part Plaintiffs' motion to compel, where he crystallized the scope of discovery on certain disputed matters and instructed the parties to confer to resolve outstanding discovery issues [ECF No. 60].

On May 13, 2021—almost exactly one year after the case was filed [ECF No. 1 (May 19, 2020)], and four days before the noticed hearing on Defendants' Motions—Defendants filed a Notice with the Court indicating that, on May 12, 2021, they submitted a Petition to the Public Utility Commission of Texas ("PUCT") [ECF No. 76].  Defendants' Petition seeks a declaration from the PUCT that clarifies whether Defendants are "required to obtain a retail electric provider certificate, under 16 Texas Administrative Code § 25.107(a)(1), to provide electric service to [Plaintiff Pete's Burgers]" [ECF No. 78-1 (Public Utility Commission of Texas's Order No. 1)]. According to Defendants, they have filed this petition because Plaintiff Pete's Burger's alleges in the FAC that Defendants "illegally provided retail electric service to Pete's Burgers without first obtaining a certificate to operate as a retail electric provider (REP) pursuant to 16 Tex. Admin. Code § 25.107(a)(1)," and that rule applies only "in areas of the state that have adopted customer choice, and as noted above, the area served by GP&L is not such an area" [ECF No. 76-1 pp. 3-4].  Defendants argue that a declaratory order by the PUCT on this issue "is necessary to avoid the possibility that Commission rules are inappropriately interpreted or misapplied by the Florida court as part of Pete's Burgers' suit in Florida" [ECF No. 76-1 p. 4].

**PARTIES' ARGUMENTS**

Defendants believe that a stay of discovery is warranted because they are likely to prevail on their Motion to Abstain and/or Dismiss [ECF No. 40 p. 4].  Defendants' Motion to Abstain asks

this Court to decline to adjudicate the case based upon the doctrines of *Burford* abstention and primary jurisdiction [ECF No. 40 pp. 1-2]. Defendants assert that Plaintiffs have alleged purported violations of Florida and Texas's administrative codes governing utilities, *see* Fla. Admin. R. 25-6.049(9)(b), *see also* 16 TAC 25, *et. seq.*, and hence that the Court should abstain from adjudicating the case to permit the relevant state agencies—Florida's Public Service Commission ("PSC") and the PUCT (Public Utility Commission of Texas)—to decide whether state regulatory policy precludes Defendants' conduct [ECF No. 40 pp. 4-5]. Defendants further claim that the Court's adjudication of this controversy could result in undue federal interference in those two states' regulatory processes [ECF No. 40 p. 5]. With respect to Rule 12(b), Defendants argue that the FAC is legally deficient in multiple respects and is premised on a misreading of the relevant lease provisions [ECF No. 40 pp. 5-6].

Beyond the foregoing merits arguments, Defendants assert that, absent a stay, Defendants will be forced to incur significant expense in responding to voluminous discovery requests spanning many properties nationwide over a fifteen-year period [ECF No. 40 pp. 6-9].

In opposition, Plaintiffs assert that Defendants are not likely to prevail in their Motion to Abstain under *Burford* and/or primary jurisdiction, or in their Motion to Dismiss under Rule 12(b) [ECF No. 47 p. 4]. As to abstention and primary jurisdiction, Plaintiffs dispute Defendants' assertion that the claims in the FAC are grounded upon purported regulatory violations, noting that none of the counts in the FAC raises claims under any state regulatory codes [ECF No. 47 p. 4]. Plaintiffs also assert that federal district courts resolve the type of claims asserted in the FAC in a commonplace fashion, including in the relatively recent and similar CBL Litigation in the Middle

District of Florida [ECF No. 47 p. 13].[2] As to Rule 12(b), Plaintiffs respond that the FAC contains well-pled allegations and states plausible claims for relief as to all counts alleged [ECF No. 47 pp. 12-18]. Finally, on the question of discovery burden, Plaintiffs argue that Defendants misrepresent the scope of the discovery requests, and that any stay would prejudice them and the class members with an undue delay in the progression of the case [ECF No. 47 pp. 18-20].

## II. LEGAL STANDARDS

"District courts are given 'broad discretion over the management of pre-trial activities, including discovery and scheduling.'" *Cabrera v. Progressive Behav. Sci., Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019) (quoting *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001)). A district court may, in the interest of obviating the need for avoidable discovery costs, issue a stay of discovery where tenuous claims for relief clearly appear to be destined for dismissal. *See Cabrera*, 331 F.R.D. at 186. "A stay of discovery pending the determination of a motion to dismiss, however, is the exception rather than the rule." *Id* (citing *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)). Indeed, "[m]otions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district," and the party seeking a stay of discovery "bears the burden of showing good cause [in support of a stay order]." *Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013). Prior to entering a stay of discovery pending resolution of a motion to dismiss, a court must "take a 'preliminary peek' at the merits of the motion" to assess whether there is a strong likelihood of dismissal that eliminates the need for discovery. *Cabrera*, 331 F.R.D. at 186 (quoting *Feldman v. Flood*, 176

---

[2] *Wavelength Hair Salons of Florida v. CBL & Associates Properties*, No. 2:16-cv-206-FtM-38MRM (M.D. Fla. March 16, 2016).

F.R.D. 651, 652 (M.D. Fla. 1997)). A court must also "balance the harm produced by delay against the possibility that the motion will be granted and entirely eliminate the need for discovery." *Id*.

### III. DISCUSSION

#### A. *Burford* Abstention Doctrine

The *Burford* abstention doctrine is "an extraordinary and narrow exception to a federal court's virtually unflagging obligation" to exercise jurisdiction. *Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1327 (11th Cir. 2021) (internal citation and quotation marks omitted); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332–33 (1943). Under *Burford*, "a federal court can decline to adjudicate—and can dismiss—a case that is otherwise within its jurisdiction, but only in a very particular, and 'narrow,' set of circumstances." *Deal*, 991 F.3d at 1327 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (en banc)). As the Eleventh Circuit has explained, in *Burford* itself, the Supreme Court held that a district court should have abstained from adjudicating an action in which a plaintiff sought to enjoin the execution of an order of a Texas agency because the merits of the order "'so clearly involve[d] basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them.'" *Deal*, 991 F.3d at 1326 (quoting *Burford*, 319 U.S. at 332).

Accordingly, "*Burford* abstention is warranted only when, by exercising its jurisdiction, a federal court would interfere with an ongoing state administrative proceeding or action." *Id* (citing *Siegel*, 234 F.3d at 1173). To evaluate that question, courts are instructed as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 360–61 (1989) (internal quotation marks omitted); *Siegel*, 234 F.3d at 1173 ("The *Burford* abstention doctrine allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.").

Applying the foregoing standards here, the Court finds no basis to refuse to decide this case under the extraordinary and narrow *Burford* exception.

First, despite Defendants' recent attempt to initiate an ongoing proceeding before the PUCT, it is questionable whether there really exists an "ongoing state administrative proceeding or action" in this case as understood within the contours of *Burford*. *See Deal*, 991 F.3d at 1326 (citing *Siegel*, 234 F.3d at 1173). This case was filed on May 19, 2020 [ECF No. 1]. There was no ongoing or preexisting state administrative proceeding or order at that time. It was not until a year later, on May 13, 2021, four days before the scheduled hearing on this motion, that Defendants chose to file a petition for a declaratory order before the PUCT—one of the two state agencies perceived by Defendants to possess exclusive jurisdiction over the claims asserted in the FAC. The petition before the PUCT remains in its infancy, with no action of substance having transpired [ECF No. 78-1 (PUCT's order directing Plaintiff Pete's Burgers to file a response to Defendants' petition)], and there is no proceeding at all before the PSC in Florida. Indeed, Defendants at least implicitly acknowledged at the hearing that the filing of the Texas petition was motivated at least in part by a recognition of the Eleventh Circuit's treatment of *Burford* itself.

Second, the claims set forth in the FAC do not hinge on resolution of complex or unsettled questions of state law. Plaintiffs allege violations of the Federal RICO Act, FDUPTA, the Florida

RICO Act, and DTPA, and they assert common law causes of action for unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. As best as the Court can discern, none of these counts depends in any material respect on the application of any state regulatory provision. It is true that a few paragraphs within the lengthy FAC do refer to purported violations of state regulatory law in Florida and Texas as relates to the provision of utility services [ECF No. 19 ¶¶3, 49, 51, 77, 78, 165]. But none of those references is pivotal to resolution of the claims in the FAC, and of course, as mentioned, none of the seven counts in the FAC actually seeks relief under any provision of state regulatory law.

Defendants insist otherwise, arguing, for example, that the question of whether Defendants were required to obtain a certificate as a Retail Electric Provider prior to providing electric service to customers directly impacts the claims in the FAC [ECF No. 39 pp. 9-10]. The Court disagrees. As noted, the FAC alleges that Defendants acted in concert with one another to fraudulently misrepresent Plaintiffs' actual electrical energy consumption for the purpose of concealing illicit overcharges to Plaintiffs for electrical power they did not use. The minimal references to state regulatory provisions are not a dispositive feature of the FAC and do not control the matters within the FAC. Moreover, to the extent those regulatory provisions shed light on the terms of the parties' lease agreement or the other claims in the FAC, Defendants have not presented any basis to conclude that such matters exceed the Court's competence.

Third, adjudicating the claims asserted in Plaintiffs' FAC will not disrupt any Florida or Texas state regulatory policy. As discussed above, *Burford's* abstention doctrine is implicated when interference by a federal court undermines a state's efforts to achieve uniformity in a particular regulatory subject area, or when a controversy presents complex issues of state law that state administrative agencies are better equipped to handle. *See Siegel*, 234 F.3d at 1173. Although

the FAC contains a handful of references to Defendants' purported violation of certain state regulatory provisions, the seven claims in the FAC consist entirely of statutory and common law theories of liability that district courts sitting in diversity handle routinely. Indeed, the FAC does not seek a finding of liability against Defendants under any state regulatory provision, and the seven causes of action in the FAC are supported by substantial allegations that are distinct from any purported regulatory violations.

In sum, the Supreme Court and the Eleventh Circuit have emphasized the narrow and extraordinary nature of the *Burford* exception.[3] This case does not present a reason to employ that extraordinary doctrine. The Eleventh Circuit appears never to have determined that a court was required to abstain under *Burford*.[4] And, when the doctrine has been applied in other circuits, it has arisen under circumstances involving concrete interference with either developed state

---

[3] *See Allegheny Cty. v. Frank Mashuda Co.*, 360 U.S. 185, 188, (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."); *Deal*, 991 F.3d at 1326 (internal quotation marks omitted).

[4] *See Deal*, 991 F.3d at 1326 (reversing district court's decision to abstain from deciding a state-law count for judicial dissolution of a state-chartered company because there was no ongoing state administrative proceeding); *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1266, 1270 (11th Cir. 2000) (rejecting applicability of *Burford* because the state law as to which the district court had abstained in favor of a state proceeding actually was preempted by federal law); *Baggett v. Dep't of Pro. Regul., Bd. of Pilot Comm'rs*, 717 F.2d 521, 524 (11th Cir. 1983) (same); *Rindley v. Gallagher*, 929 F.2d 1552, 1557 (11th Cir. 1991) (reversing district court's decision to dismiss a complaint based on *Burford* even though the federal court was in a position to declare a state regulatory procedure unconstitutional); *Siegel*, 234 F.3d at 1168 (refusing to apply the narrow *Burford* doctrine in an election case where plaintiffs sought to enjoin Florida counties from conducting manual recounts in presidential election); *S. Ry. Co. v. State Bd. of Equalization*, 715 F.2d 522 (11th Cir. 1983) (reversing district court's decision to abstain under *Burford* where private rail carriers brought a claim under federal law to enjoin a previously announced order by a state board assessing taxes against the plaintiffs); *Nasser v. City of Homewood*, 671 F.2d 432, 440 (11th Cir. 1982) (concluding that *Burford* abstention was inappropriate where landowners argued that local zoning board's ordinance violated federal law).

proceedings or comprehensive state policy that directly implicated the matters asserted in the federal litigation.[5]  No such circumstances are presented here.

For these reasons, Defendants *Burford* abstention argument fails, and a stay of discovery on that basis is unwarranted.

### B. Primary Jurisdiction Doctrine

Defendants also invoke the primary jurisdiction doctrine as a basis to withhold Court resolution of the case and instead refer the matter to the relevant Florida and Texas regulatory agencies. "'Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (quoting *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988)).  Even where a court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine counsels in favor of abstention "'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative

---

[5] *See, e.g.*, *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 351 (4th Cir. 2002) (affirming district court's order granting motion to dismiss on *Burford* grounds where plaintiff insurance company sought rescission in federal court of a life insurance policy that was a claimed asset at issue in receivership proceedings pending in state court, and where abstention was appropriate to prevent interference with the underlying state receivership proceedings); *Gen. Glass Indus. Corp. v. Monsour Med. Found.*, 973 F.2d 197, 201 (3d Cir. 1992) (affirming application of *Burford* abstention where plaintiff's claims "dovetailed" with pre-existing claims brought by Pennsylvania's Insurance Commissioner in ongoing state liquidation proceedings); *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 159 (4th Cir. 1993) (holding that *Burford* abstention was warranted over plaintiffs' challenge to validity of preexisting hazardous-waste permits issued by state environmental agency); *Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 905-06 (6th Cir. 1983) (holding that *Burford* abstention was appropriate where plaintiffs sought federal district court's review of state agency's determination that additional permits were not necessary to construct hazardous waste facility); *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1348–49 (D.N.M. 1995) (abstaining pursuant to *Burford* because plaintiff's claim was essentially "an indirect collateral attack" on state administrative agency's previous decision).

body . . . ."' *Smith*, 236 F.3d at 1298 n.3 (quoting *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956)). "[I]n such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *W. Pac. R. Co.*, 352 U.S. at 64.

The primary jurisdiction doctrine is inapplicable in this action for the same reasons discussed in the foregoing section addressing the *Burford* abstention doctrine. Plaintiffs seek monetary damages based on common law theories of liability such as unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as for alleged violations of various state statutory provisions that proscribe deceptive commercial practices. As mentioned previously, these causes of action are regularly handled by federal and state trial courts, and they do not depend in any material way on Defendants' purported violations of administrative codes governing the provision of utility services in Florida or Texas. As such, there are no issues before the Court that require the special knowledge of a regulatory body or that otherwise exceed the Court's competence. The doctrine of primary jurisdiction doctrine is inapplicable.

### C. Federal Rule of Civil Procedure 12(b)

This Order does not address Defendants' Motion to Dismiss under Rule 12(b) except to conclude that a stay of discovery pending resolution of the Rule 12(b) arguments is not warranted under the applicable standard for a stay of discovery.

### D. Discovery Burden

As a final matter, the Court is unpersuaded by Defendants' argument that an order granting a stay of discovery is warranted due to the burden that will be incurred in responding to Plaintiffs' discovery requests. Defendants may present such arguments, as appropriate, to Magistrate Judge Hunt for resolution according to his discovery procedures and the Federal Rules of Civil Procedure [*see* ECF No. 60].

CASE NO. 20-60981-CIV-CANNON/Hunt

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Temporarily Stay Discovery Pending a Ruling upon the Motion to Abstain or Alternatively to Dismiss [ECF No. 40] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 21st day of May 2021.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**