**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| CAFE, GELATO & PANINI LLC, d/b/a/ CAFE, GELATO PANINI, on behalf of themselves and all others similarly situated, | Case No: 0:20-cv-60981 AMC |
| *Plaintiff,* | |
| v. | |
| SIMON PROPERTY GROUP, INC., SIMON PROPERTY GROUP, LP., M.S. MANAGEMENT ASSOCIATES, INC., and THE TOWN CENTER AT BOCA RATON TRUST, | |
| *Defendants.* _____/ | |

**PLAINTIFF'S MOTION TO SEVER
AND DISMISS COUNTERCLAIMS AND
MEMORANDUM OF LAW IN SUPPORT**

Two years into this class action, mere weeks before the close of discovery and, tellingly, more than five years since Cafe Gelato vacated its 408 square-foot coffee shop and Defendant The Town Center at Boca Raton (the "Trust") retook possession of it, the Trust asserts a counterclaim against Café Gelato based on an obviously time-barred claim to collect rent. After the Trust retook possession of the premises in February 2017, it did not pursue legal action against Cafe Gelato for payment of rent or any other purported breaches of its lease with the Trust. Yet now, over five years later, the Trust seeks to bring these claims against Café Gelato for the transparent purpose of derailing the current litigation and harassing the last-named Plaintiff into dropping its claims, just like Defendants did with DJames Foods. To avoid having to extend the schedule in this matter yet again so that Plaintiff can take discovery on these time-barred eleventh-hour counterclaims, they should be severed and resolved separately.

The Trust's counterclaims continue the Defendants' pattern of seeking to delay or disrupt this litigation. Defendants framed an irrelevant administrative action before the Public Utilities Commission of Texas four days before the hearing on their motion requesting that the Court abstain due to an "ongoing" administrative proceeding action. *See* [D.E. 147 at 7]. They delayed discovery for months, including by misrepresenting that they were complying with the parties' agreed scope of discovery, only to reveal at the last minute that they were producing documents for only three malls, resulting in sanctions being imposed against them. [D.E. 107 at 3]. And less than one week before discovery was set to close, the Defendants filed a frivolous Rule 11 motion [D.E. 152-1], at the same time they served their answer, these counterclaims, and 45 legally inadequate affirmative defenses. The Court should not permit the Defendants to disrupt the proceedings or the current schedule in this class action. The counterclaims should be severed under Fed. R. Civ. P. 21, and thereafter dismissed for the reasons set forth below.[1]

---

[1] The alternative is to enlarge the schedule for discovery in this matter to give Plaintiff time to gather the

## MOTION TO SEVER AND DISMISS

Under Fed. R. Civ. P. 21, a court "may sever any claim against a party." Since Rule 21 allows severance of "any claim," a court may sever any counterclaim. *Id.*; *see also United States v. O'Neil*, 709 F.2d 361, 370 (5th Cir. 1983). In evaluating a motion to sever, courts consider case-specific factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of claims or judicial economy would be facilitated by severance; (4) whether prejudice would be avoided if severance was granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003). Weighing these factors compels severance in this case.

First, the Trust's counterclaims are permissive counterclaims, easily severed because they do not rely on the "same operative facts" as this class action. *See Republic Health Corp. v. Lifemark Hosps. Of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Whereas the Plaintiff's claims relate to a nationwide RICO conspiracy between Defendants and Valquest to inflate and mark-up thousands of tenants' electricity charges while disguising their conduct in order to evade detection, the Trust's counterclaims allege the breach of a single lease for non-payment of rent. Thus, the claims hinge on different legal theories and facts and involve different proof. *See, e.g.*, *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 202 F.R.D. 212, 216 (S.D. Tex. 2001) (holding that the defendant's breach of contract counterclaim was permissive where the plaintiff brought a RICO action for itself and a proposed nationwide class of employers because the claims did not arise from the "same aggregate of operative facts" and that the "original claim is based on an entirely different legal theory than [the defendant's] counterclaim—i.e., RICO versus breach of contract."). Plaintiff's claims

---

evidence it needs to defend against these permissive counterclaims should the Court not dismiss them with prejudice for the reasons set forth below. If the Court severs the counterclaims, they can be dealt with separately so that they will not derail this class action.

center on whether the Defendants orchestrated a conspiracy with Valquest to defraud tenants across the nation by inflating their electrical consumption calculations, marking up the rate, and inflating electrical charges. *See* [D.E. 19 at 2-3 (Am. Class Action Compl.)]. The Trust's counterclaims do not relate in any way to the calculation of Plaintiff's electrical charges or energy consumption. Nor do the Trust's counterclaims implicate the same lease provisions at issue in the class action or the same operative facts. *See Oculus Optikgerate GmbH v. Insight Instruments, Inc*., 2013 WL 12096458, at *2 (S.D. Fla. Oct. 22, 2013) (holding that counterclaim was permissive because though the claim and counterclaim involved the same contract, "'the operative facts' are different between the two claims of breach.") (citation omitted). Rather, the counterclaims allege that Cafe Gelato breached its lease by abandoning the premises, failing to pay rent, and not operating a "first-class" coffee shop. *See* [D.E. 154 at 47]. The counterclaims do not implicate the class action because they have nothing to do with whether Defendants engaged in a RICO enterprise to defraud the Class through inflated electricity charges.

Second, severance is appropriate where "it will serve the ends of justice and further the prompt and efficient dispositions of litigation." *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995), citing *General Tire & Rubber Co. v. Jefferson Chem. Co.,* 50 F.R.D. 112, 114 (S.D.N.Y.1970). Here, the Trust sat on its counterclaims (and its rights) for over five years after its alleged cause of action accrued, then compounded the disruption it hoped to cause by asserting them at the close of discovery in this case. In so doing, the Defendants hope to either further delay the class action litigation because Café Gelato is entitled to and must conduct discovery on the counterclaims or prejudice the Plaintiff by denying it time to conduct meaningful discovery on the counterclaims. Either result burdens the Court and Café Gelato. But then that is the point. If Defendants were so concerned about their lost rent, they would have brought the counterclaims as a stand-alone action years ago, and certainly before the statute of limitations ran on them. That they

3

did not tells this Court everything it needs to know about the true purpose (and merit) of these counterclaims. Severance therefore serves the ends of justice by allowing the class action litigation to proceed as scheduled, while also allowing the parties to properly conduct discovery related to the counterclaims if they survive a motion to dismiss. Severance will also not prejudice the Trust (other than to thwart its effort to derail the class action). Therefore, severance is warranted here.

Once the counterclaims are severed, they should then be dismissed because they are barred by the applicable statute of limitations. Under Florida law, a party must commence a claim for breach of contract within five years of the accrual of the cause of action. § 95.11(2)(b), Fla. Stat. A cause of action for breach of contract accrues at the time of the contract's breach. *Holiday Furniture Factory Outlet Corp. v. State, Dep't of Corr.*, 852 So. 2d 926, 928 (Fla. 1st DCA 2003) (citing *State Farm Mut. Auto Ins. Co. v. Lee*, 678 So. 2d 818 (Fla. 1996)). When a tenant breaches a lease, a lessor may treat the lease as terminated and retake possession of the property. *Holiday*, 852 So.2d at 928 (citations omitted). Here, the Trust did just that on February 7, 2017, and then demanded full payment of rent under the lease. *See* [D.E. 154 at 46]; *see also* [D.E. 154, Ex. B at 8 (February 17, 2017, Demand Notice Sent to Café Gelato)]. By retaking possession of the premises and accelerating the total debt obligation under the lease, the Trust's claims against Café Gelato accrued no later than on February 7, 2017. That, of course, is more than five years before the Trust filed its counterclaims, the filing date of which is beyond the applicable statute of limitations.[2] The counterclaims must be dismissed.

---

[2] The Trust's counterclaim for unjust enrichment is subject to a shorter statute of limitation of four years. § 95.11(k), Fla. Stat. Since the facts underlying the unjust enrichment counterclaim occurred prior to Simon retaking possession of the premises in February 2017, this claim is similarly time-barred. And if the Trust has a valid lease contract, as it insists it does, it cannot bring a claim for unjust enrichment. "It is well settled in Florida that ... a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015).

4

## ARGUMENT

**I.     The Court should sever the counterclaims that the Trust initiated at the eleventh hour to derail the years-old class action litigation.**

Federal Rule of Civil Procedure 21 empowers a court to sever where "the connection between the claims is tenuous." *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 156 (S.D.N.Y. 2003); *see also Rice v. Sunrise Express*, 209 F.3d 1008, 1017 (7th Cir. 2000) (holding that severance is appropriate when the claims are "discrete and separate"). In evaluating whether to sever claims, courts consider whether the claims arise from the same transaction or occurrence, whether severance promotes judicial economy, and whether severance prevents or results in prejudice to the parties. *See Gilead Scis., Inc. v. All. Med. Ctr., Inc.*, 2021 WL 2580415, at *2 (S.D. Fla. Apr. 20, 2021). All of these factors compel severing the late-filed counterclaims.

**A) The Trust's counterclaims are permissive counterclaims that arise out of a landlord-tenant dispute and do not relate to Defendants' nationwide RICO conspiracy to inflate electricity bills.**

The Trust's permissive counterclaims are not part of "the same transaction or occurrence that is the subject of" the Plaintiff's class action claims. Fed. R. Civ. P. 13(b). The Amended Complaint alleges a nationwide racketeering conspiracy between Defendants and Valquest where they engaged in the illegal overcharging of tenants for electricity. That conduct involved creating inflated electricity consumption calculations, making false representations to tenants about how their charges would be determined, marking up the rate on those electrical charges, and concealing the scheme. *See* [D.E. 19 at 2-3; D.E. 161 at 1-11]. The Trust's counterclaims do not relate to the electrical overcharge scheme, except that Defendants brought the counterclaims to retaliate against Plaintiff for bringing the class action lawsuit. Rather, the Trust's counterclaims focus on rent claimed from a tenant vacating its space back in 2017. *See* [D.E. 154 at 43 and 47] (alleging Cafe Gelato's breach by abandoning the premises, failing to pay rent, and "failing to operate as a first-class facility.") None of these alleged breaches relate to the Plaintiff's allegations of systematic fraud surrounding energy

5

billing.  Since tethering the current class action to these incipient and unrelated claims is unnecessary, the Court should sever them.

The vast differences between the transactions and events highlight that the Trust's counterclaims are permissive when analyzed under the "logical relationship" test that the Eleventh Circuit uses for determining whether a counterclaim is compulsory or permissive.  *See Republic Health Corp. v. Lifemark Hosps. Of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985).  A counterclaim is compulsory only when a logical relationship exists between the claim and counterclaim.  A logical relationship exists "when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* at 1453 (quoting *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1361 (5th Cir. 1979) (internal quotation marks omitted)).  In evaluating whether a claim is permissive, courts consider: "(1) sameness of issues of fact and law raised by the claim and counterclaim; (2) whether absent the compulsory counterclaim res judicata rules would bar a subsequent suit on the counterclaim; (3) whether substantially the same evidence supports or refutes the main claim as well as the counterclaim; and (4) whether there is any logical relation between the main claim and counterclaim." *Radisson Hotels Intern., Inc. v. Amelia Investments, Inc*., 1992 WL 167051, at *4 (M.D. Fla. July 6, 1992) (citing *Sue and Sam Mfg. Co. v. BLS Construction Co*., 538 F.2d 1048, 1051 (4th Cir. 1976)).

First, where, as here, counterclaims arise from different provisions of a contract than a plaintiff's claims, they are permissive.  *See Oculus Optikgerate GmbH v. Insight Instruments, Inc*., 2013 WL 12096458, at *2 (S.D. Fla. Oct. 22, 2013) (internal citation omitted); *Fortune Mgmt., Inc. v. Bly*, 118 F.R.D. 21, 23 (D. Mass. 1987); *Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am*., 71 F.R.D. 697, 701 (W.D. Okla. 1976).  Similarly, when a plaintiff asserts claims based on illegal conduct by the defendant, counterclaims alleging breach of the contract for non-payment are

permissive.  *See, e.g.*, *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209-10 (2d Cir. 2004) (holding that debt collection counterclaims in class action alleging discriminatory lending practices were permissive).

None of the Trust's counterclaims involve the factual or legal questions related to the Plaintiff's allegations of systematic fraud surrounding its electricity charges.  Resolution of the Plaintiff's claims hinge on factual and legal questions, such as (1) the representations in the utility provision in the Defendants' standard lease, (2) the existence of a conspiracy to defraud tenants by overcharging for electricity, and (3) proof that the conspirators inflated tenant electric bills and marked up rates.  In contrast, adjudication of the Trust's claim involves determining whether Cafe Gelato abandoned the premises, owed rent, or violated its lease by "placing crude and distasteful signage and clothing within its premises." [D.E. 154 at 46].  These alleged breaches involve different legal issues and factual questions.  Put another way, whether Café Gelato breached its lease with the Trust does not control whether the Defendants engaged in a conspiracy with Valquest to inflate tenant electric consumption calculations and marked up rates in order to overbill tenants for electricity.  *See also Sandwich Chef of Texas, Inc.*, 202 F.R.D. at 215-16 (severing defendant's permissive counterclaim because plaintiff's RICO class action was "based on an entirely different legal theory than [the defendant's] counterclaim—i.e., RICO versus breach of contract.")  Accordingly, the Court should sever the permissive counterclaims filed by the Trust.

### B) Severance is necessary to prevent the Trust's untimely and permissive counterclaims from derailing the pending class action or prejudicing Café Gelato's ability to defend against the counterclaims.

Severance is appropriate when "it will serve the ends of justice and further the prompt and efficient dispositions of litigation." *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995), citing *General Tire & Rubber Co. v. Jefferson Chem. Co.,* 50 F.R.D. 112, 114 (S.D.N.Y.1970).  Severance is particularly appropriate "to simplify a case [from] becoming

7

increasingly unmanageable." *Est. of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010). Here, the Plaintiff initiated the class action on May 19, 2020, two years ago, and filed the Amended Complaint on September 24, 2020. *See* D.E. 1 and 19. The Defendants throughout this case deployed various tactics to delay or disrupt this matter, including by manufacturing frivolous administrative proceedings in Texas, refusing to provide discovery for months until ordered by the magistrate judge to proceed, and then misrepresenting that they were complying with the parties' discovery agreements before admitting they were not and refusing to do so, requiring a further order from the magistrate judge that they comply with the agreed discovery post haste and be sanctioned. *See* [D.E. 147 at 7 (recognizing Defendant's "tactical decision" to file a petition with the Public Utilities Commission of Texas)]; [D.E. 107 at 3 ("find[ing] it necessary to sanction Defendants for what has amounted to an impermissible delay in discovery")]. All of this is part of Defendants' effort to obstruct this litigation, of which the counterclaims are only the latest part.

The Trust's counterclaims arise from a 2014 lease that the Trust claims Café Gelato breached over five years ago. Despite having years to pursue Café Gelato for rent owed, the Trust retook possession of the space and dropped the matter. Even after the Trust concluded eviction proceedings in early February 2017, it failed to prosecute claims against Café Gelato. *See* Ex. 1 (May 31, 2018, Order of Dismissal without Prejudice for Lack of Prosecution). This lack of action by the Trust continued for years, though there was nothing preventing the Trust from initiating an action. Yet now, days before discovery was set to close, the Trust filed its permissive counterclaims (and not a standalone case) under circumstances where Plaintiff would be unable to obtain discovery under the Court's current scheduling order. While Café Gelato quickly served discovery on the counterclaims, even the Court's recent extension of the discovery deadline to May 6, 2022, will not allow Café Gelato

8

to timely complete discovery under the applicable rules.[3] These circumstances further support the severance of the counterclaims, which would allow discovery relating to those claims to proceed on their own schedule without prejudice to Plaintiff or the Class and without rewarding Defendants for their dilatory tactics.[4]

Because the factual and legal issues are distinct from the underlying litigation, the Trust's counterclaims jeopardize the pending class action and the Court's schedule. The Defendants knew the Court's schedule and they nonetheless waited until the eleventh hour to file the Trust's unrelated counterclaims. They did this for the same reason they delayed discovery, backloaded Rule 30(b)(6) depositions to what was then the last three days of fact discovery, and filed their Rule 11 motion on the eve of the close of discovery – they want to derail the litigation schedule and prejudice the Plaintiff at one of the critical junctures of this case, class certification. If the Court delays this litigation to allow Café Gelato to conduct discovery, it will only further burden the Court's schedule and its resources. But delay also harms the putative class by postponing adjudication of their claims. *See Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 624 (D. Kan. 2003) (severing defendant's counterclaims because adjudication of claims and counterclaim in one action would "result in significant delay of and prejudice to plaintiff's case, and would further substantially inconvenience this court."). That said, Café Gelato is entitled to sufficient time and opportunity to conduct discovery and defend itself against the counterclaims brought by the Trust if they survive dismissal, and would be severely prejudiced without it. Severance is the only proper way to avoid

---

[3] Defendants are insisting on yet another Rule 30(b)(6) deposition of Café Gelato, in violation of the parties' agreement that the original nine hour deposition of Café Gelato would be the only one. Defendants clearly intend to get their discovery on the counterclaims while depriving Plaintiff of the same right.

[4] For example, Café Gelato seeks to discover evidence relating to (1) the use and occupancy of the space after the Trust retook possession; (2) the extent to which the Trust mitigated its damages by acting in good faith to find a substitute tenant; (3) information supporting the Trust's calculation of damages; (4) evidence supporting the Trust's conclusory and factually unsupported claims that Café Gelato did not operate as "first-class" facility or was a "problem tenant," [D.E. 154 at 46]; and (5) whether the Trust waived or acquiesced to any of Café Gelato's alleged breaches.

9

prejudicing the Plaintiff or derailing this litigation.

### C) Severance is appropriate because the Trust's counterclaims involve different legal questions, witnesses, and evidence.

Severance is further warranted because the Trust's counterclaims involve different legal questions, issues, and evidence that can be developed independent of the current litigation. Severance is appropriate when the counterclaim "is based upon an entirely different factual situation from that which supports the plaintiff's claim." *CVI/Beta Ventures, Inc.* at 896 F. Supp. 506 (citations omitted); *see also Khanna v. State Bar of Cal.*, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) (citation omitted). The counterclaims involve a single defendant, the Trust, against a single plaintiff, Café Gelato. The counterclaims do not relate to the inflation of electrical billing. The issues involve Florida landlord-tenant law related to whether Café Gelato breached its lease when it vacated the space. The witnesses to these claims will largely differ from those involved in the class action because the class action focuses on electrical consumption calculations and Simon's relationship with Valquest from 2003. In contrast, potential witnesses on the counterclaims will have knowledge about the Trust's allegations about Café Gelato vacating the Town Center Mall in Boca Raton in early 2017, Simon's retaking of possession and mitigation efforts relating to its new tenants for that space. Defendants' notice of deposition of Café Gelato's corporate representative (which would be the third deposition of it) even recognizes the unrelatedness of the Trust's counterclaims as it identifies individuals who have never come up in the class action and have no relationship with it. *See* Ex. 3 (Defs.' April 26, 2022, Notice of Deposition). Clearly, the Trust did not care to pursue any of these claims before now despite the opportunity over more than five years. It should not be heard to complain about severance of its late-filed claims so that reasonable discovery can be completed in that matter while the class action proceeds to resolution.

II.  **The Trust's counterclaims should be dismissed because they fail to plead sufficient facts to establish the counterclaims and are time-barred**

A) **The Trust's counterclaims are barred under the statute of limitations**

Once the counterclaims are severed, the Court should dismiss them because they are barred by the statute of limitations, which for the breach of contract claim is five years from the accrual of the cause of action. § 95.11(2)(b), Fla. Stat. A cause of action for breach of contract accrues at the time of the contract's breach. *Holiday Furniture Factory Outlet Corp. v. State, Dep't of Corr.*, 852 So. 2d 926, 928 (Fla. 1st DCA 2003) (citing *State Farm Mut. Auto Ins. Co. v. Lee*, 678 So. 2d 818) (Fla. 1996)). In addition,

> numerous Florida cases have reiterated the general rule that when there has been a breach, abandonment, or renunciation of a lease before the expiration of the term, the lessor has three options. The lessor may (1) treat the lease as terminated and retake possession for the lessor's purposes; (2) hold possession for the lessee's account, in which case the lessee is responsible for any difference between the rent obligation and amounts the lessor recovers by reletting the premises; or (3) stand by and do nothing and sue the lessee as each installment of rent matures, or sue for all the rents due when the lease expires."

*Holiday*, 852 So.2d at 928 (citations omitted). In this case, the Trust exercised the first option, a decision that renders the counterclaims untimely.

As alleged in the counterclaim, the Trust retook possession of Café Gelato's leased premises on February 7, 2017. [D.E. 154 at 46]; *see also* Ex. 2 (Joint Stipulation to Final Judgment of Possession). On February 17, 2017, the Trust demanded that Café Gelato pay the entire amount owing under the lease, calculating the amount as "$22,465.01 for rent in arrears and an additional $295,732.41 constituting the then-net present value of rent for the remaining duration of the lease term." [D.E. 154 at 46]; *see also* [D.E. 154, Ex. B at 8 (February 17, 2017, Demand Notice Sent to Café Gelato)]. Therefore, by retaking possession of the premises and accelerating the total debt obligation under the lease, the Trust's cause of action against Café Gelato accrued no later than on February 7, 2017, more than five years before it filed the counterclaims. The Trust also alleges

11

breaches based on Cafe Gelato's supposed abandonment of the premises and operation of its business. Any alleged breach arising from that conduct also occurred no later than when the Trust retook the premises on February 7, 2017. Therefore, the statute of limitations relating to the Trust's counterclaims accrued—at the latest—on February 7, 2017. This is beyond the five-year statute of limitations for breach of contract actions and accordingly, the counterclaims are time-barred.[5] Similarly, putting aside other deficiencies, the Trust's counterclaim for unjust enrichment is untimely, as it is governed by a four-year statute of limitations for legal or equitable actions not founded on a written instrument. *See* § 95.11(3)(k), Fla. Stat. All the alleged events, and knowledge by Simon relating thereto, predated the Trust's retaking possession of Café Gelato's space and therefore accrued no later than February 7, 2017. Consequently, the counterclaims should be dismissed.

    **B) The Trust's counterclaims make conclusory assertions that fall short of the pleading requirements needed to establish their claims**

The Trust's counterclaims should be dismissed because they fall short of the pleading requirements embodied by *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 8.[6] The Trust makes conclusory assertions that Café Gelato failed "to operate as a first-class facility" without any factual support. [D.E. 154 at 47]. While counterclaims need not contain detailed factual assertions, claims that make "naked assertions, without further factual enhancement or formulaic recitations of the elements of a cause of action are not enough to survive a motion to dismiss." *Wright v. Howmedica Osteonics Corp.*, 741 F. App'x 624, 626 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

---

[5] The statute of limitations cannot be avoided by invoking the relation-back doctrine. As discussed earlier in this motion, the Trust's counterclaims are permissive. The statute of limitations bars the filing of permissive counterclaims beyond the statute of limitations. *See United Healthcare Servs. Inc. v. Sanctuary Surgical Ctr., Inc.*, 2014 WL 12300314, at *1 (S.D. Fla. Dec. 24, 2014) (noting that under Fed. R. Civ. 13, only compulsory counterclaims "relate back" for statute of limitations purposes); *Smith v. Fla. Dep't of Corr.*, 27 So. 3d 124, 127 (Fla. 1st DCA 2010).

[6] The Trust's unjust enrichment counterclaim depends on the same assertions made by the Trust regarding its breach of contract counterclaim. *See* [D.E. 154 at 48].

Under Florida law, a breach of contract claim requires a party to allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Here, the Trust asserts that Café Gelato breached the lease by failing to operate as a "first-class facility" but does not explain what this vague and conclusory term means. The Trust also fails to provide any factual support to establish how Café Gelato breached this condition. The Trust does not identify a single incident during the years Café Gelato occupied its premises which constituted a failure by Café Gelato to operate as a "first-class facility." Recognizing this pleading defect, the Trust makes the unadorned assertion that Café Gelato displayed "crude and distasteful signage and clothing within its premises" as an "example" of this breach. [D.E. 154 at 47]. This only further clouds the Trust's counterclaim. The Trust does not describe what it means by "crude" or "distasteful" signage and clothing, nor does it even identify when this conduct occurred. In fact, the Trust's counterclaim does not even assert that this conduct even occurred, but rather, that the Trust "received a complaint" that Café Gelato engaged in this conduct. [D.E. 154 at 46]. None of these assertions provide any basis to conclude that Café Gelato breached its lease. *See also PNCEF, LLC v. Highlander Enterprises, LLC*, 2010 WL 11504754, at *3 (S.D. Fla. Mar. 2, 2010) (dismissing breach of contract claim where defendant did not allege any underlying facts showing how the plaintiff breached the contract). The Trust's counterclaim also fails to describe how Café Gelato's failure to operate as a "first-class" facility damaged the Trust. The counterclaim does not explain how the onetime display of "crude and distasteful" signs and clothing at a 408 square-foot coffee shop injured the mall—likely because the Trust cannot claim that it did suffer damages. Accordingly, the Court should dismiss the Trust's breach of counterclaim because it fails to establish a claim.

The Court should also dismiss the Trust's unjust enrichment claim because it suffers from a similar pleading defect as the breach of contract claim. To establish an unjust enrichment claim, a

13

plaintiff must show that "the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Kissner v. McDonald's Corp.*, 2018 WL 5832979, at *4 (S.D. Fla. Nov. 2, 2018). The Trust makes the barebones assertion that it conferred a benefit on Café Gelato of use of the premises but does not adequately describe the benefit. The Trust does not describe whether the benefit relates to the time Café Gelato used the premises or whether—like its breach of contract claim—the benefit relates to the entire time of the lease. The counterclaim does not describe the period Café Gelato received the alleged benefit to better understand this critical difference. By reincorporating the assertions made in support of the breach of contract claim, without any additional information, the Trust's unjust enrichment claim does not provide adequate facts to understand its equitable claim. Therefore, this claim should also be dismissed.

## CONCLUSION

The Trust's time-barred and permissive counterclaims are another attempt by Defendants to derail the class action. Severance under Rule 21 prevents this, while protecting Plaintiff from any prejudice that would result from delaying the class action or denying it discovery on the counterclaims. Once severed, the counterclaims should be dismissed as untimely based on the Trust's admissions in its allegations and for failing to comply with the pleading standards.

DATED: May 2, 2022.                                Respectfully Submitted,

/s/ *David M. Buckner*
David M. Buckner, Esq.
Florida Bar No. 0060550
david@bucknermiles.com
Seth Miles, Esq.
Florida Bar No. 0385530
seth@bucknermiles.com
Brett E. von Borke
vonborke@bucknermiles.com
Florida Bar No. 0044802

14

        Buckner + Miles
        2020 Salzedo Street, Suite 302
        Coral Gables, Florida 33134
        Telephone:305.964.8003
        Facsimile: 786.523.0485

        &

        Cristina M. Pierson, Esquire
        Florida Bar No. 984345
        cmp@kulaw.com
        Kelley|Uustal
        500 N. Federal Highway, Suite 200
        Fort Lauderdale, Florida 33301-1103
        Telephone: 954-522-6601

        *Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on May 2, 2022, on all counsel or parties of record on the Service List below.

/s/Seth Miles
Seth Miles, Esq.
Florida Bar No. 0385530
seth@bucknermiles.com

## *SERVICE LIST*

Mitchell W. Berger, Esq.
Fred O. Goldberg, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
mberger@bergersingerman.com
fgoldberg@bergersingerman.com

James T. Smith, Esq.
Daniel Ryhnhart, Esq.
Blank Rome LLP One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
Smith-jt@BlankRome.com
rhynhart@blankrome.com

*Counsel to Simon Property Group, Inc.,Simon Property Group, L.P., M.S. Management Associates, Inc., and The Town Center at Boca Raton Trust*